IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| | § | |
| v. | § | CRIMINAL NO. H-04-0245 |
| | § | |
| SHERMAN ERNESTO ROBINSON | § | (Civil Action No. H-06-0309) |

## MEMORANDUM AND ORDER

Pending before the Court is a motion to vacate, set aside, or correct sentence filed by

the defendant, Sherman Ernesto Robinson, under 28 U.S.C. § 2255.  (Crim. Doc. # 38).  The

government has filed an answer and motion to dismiss, arguing that Robinson is not entitled

to relief under § 2255.  (Crim. Doc. # 46).  Robinson has not filed a response, and his time

to do so has expired.  The Court has carefully reviewed all pertinent matters in this criminal

case.  Based on this review, the Court's clear recollection of the relevant proceedings, and

the application of governing legal authorities, the Court **denies** the defendant's motion and

**dismisses** the corresponding civil action (H-06-0309) for the reasons set forth below.

## I.    BACKGROUND AND PROCEDURAL HISTORY

On May 27, 2004, a federal grand jury in this district returned an indictment in this

case, charging Robinson, a previously convicted felon, with unlawful possession of a firearm

in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  On July 29, 2004, Robinson pled

guilty to those charges without a written plea agreement.  During the rearraignment, the

government presented a factual summary of what it had expected to prove beyond a reasonable doubt in the event of a trial.

According to the government's factual summary, police officers encountered Robinson and an acquaintance on January 25, 2004, when they were identified as possible suspects in a robbery.   A search of Robinson's person revealed a firearm, namely, a Ruger 9 millimeter caliber pistol, in the waistband of his pants.   Robinson acknowledged possessing the weapon, explaining that he obtained the firearm from a friend and that he needed the gun for protection.   The firearm in question was manufactured in Prescott, Arizona, and not Texas, meaning that it had traveled in interstate commerce at some time before or during the time Robinson possessed it.   The government also reported that Robinson had at least seven prior felony convictions when he was found in possession of the firearm.

Robinson denied having any participation in the robbery.   Robinson conceded, however, that he "knowingly, unlawfully carried a weapon" and that the firearm found in the waistband of his pants belonged to him.   After considering Robinson's remarks, the Court found that the factual basis for the offense was satisfied.[1]   As Robinson's defense counsel pointed out, and the government conceded, none of Robinson's prior felony convictions were

---

[1]    To establish the offense of being a felon in possession of a firearm, the government has the burden to prove three elements beyond a reasonable doubt: (1) that the defendant previously had been convicted of a felony; (2) that he possessed a firearm; and (3) that the firearm traveled in or affected interstate commerce. 18 U.S.C. § 922(g)(1); *United States v. Guidry*, 406 F.3d 314, 318 (5th Cir. 2005), *cert. denied*, — U.S. —, 126 S. Ct. 190 (2005). The interstate commerce element of a § 922(g)(1) charge is satisfied where the government demonstrates that the firearm was manufactured out of state. *See id.* (citations omitted).

so serious as to merit an enhanced penalty under 18 U.S.C. § 924(e).[2]  After accepting the

guilty plea, the Court asked the Probation Office to prepare a Presentence Report (a "PSR")

for the purpose of determining the sentence.

The PSR prepared by the Probation Office outlined the facts underlying the offense

in detail,[3] and determined that Robinson faced a base offense level score of 24 under the

_____

[2]     A conviction for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) carries a potential sentence of up to ten years' imprisonment.  Under 18 U.S.C. § 924(e), a felon who possesses a firearm in violation of § 922(g) while having three previous convictions for a violent felony or a serious drug offense, or both, may face a minimum prison sentence of not less than fifteen years.

[3]     The facts of the underlying offense, as outlined in the PSR, are as follows:

On January 25, 2004, Houston Police Officers responded to a call reporting a robbery at 10001 Club Creek Drive, Houston, Texas.  At the scene, a Norma Torres told officers that she arrived at her apartment complex and parked her truck in the parking lot next to her apartment.  As she walked past a white Toyota Celica, an unknown black male wearing a red hooded sweatshirt and red baseball cap, later identified as Terrence Gibson, jumped out of the passenger side of the vehicle, . . . [assaulted her,] took Torres' purse and then ran back to the vehicle driven by another black male subject, later identified as Sherman Ernesto Robinson.  Gibson got into the passenger seat, and they drove away from the scene.  A neighbor heard Torres scream and called the police.  Officers noted Torres had a minor scratch on her right shoulder.

A police officer patrolling an area near the scene of the robbery observed a vehicle matching the description given by Torres.  Torres was taken to the location of the vehicle and she identified the white Toyota Celica as the one used by Gibson to leave the scene of the robbery.  Officers watched the vehicle for a few moments and saw Gibson and Robinson walk toward the vehicle.  The offices observed Gibson was wearing a red sweatshirt and a red baseball cap. . . . Officers approached Gibson and Robinson and detained both of them.  Officers recovered a Ruger 9mm pistol loaded with 10 rounds of live ammunition, from Robinson's waistband.  A check of criminal records revealed Robinson had prior felony convictions.  Gibson and Robinson were

(continued...)

3

applicable United States Sentencing Guidelines.  The Probation Office added 2 levels to raise the base offense level score to 26, pursuant to § 2K2.1(b)(4) of the Sentencing Guidelines, because the firearm found in Robinson's possession reportedly was determined to have been stolen.[4]  Robinson received a 3-level reduction in the base offense level for acceptance of responsibility, which resulted in a total offense level score of 23.  Robinson's lengthy record of convictions earned him a criminal history score of 24, placing him in the highest category (VI) under the Sentencing Guidelines.  Thus, with a total offense level score of 23 and his placement in criminal history category of VI, Robinson faced a potential range of imprisonment from 92 to 115 months.

The Court continued the sentencing of this case until after the Supreme Court issued its decision in *United States v. Booker*, 543 U.S. 220 (2005), which resolved constitutional questions about the Sentencing Guidelines by making them advisory rather than mandatory. After considering the applicable law, objections to the PSR, argument by the parties, and a statement by the defendant, the Court sentenced Robinson at the lowest end of the range recommended by the Sentencing Guidelines and imposed a 92-month term of imprisonment.

---

[3]         (...continued)
                    brought back to the scene of the robbery where Torres identified Gibson as
                    the individual who robbed her.  Both [Gibson and Robinson] were arrested.
                     . . .

           *PSR* ¶¶ 4-5.  As noted above, Robinson disputes his participation in the robbery that resulted
           in his arrest.

[4]         Robinson told police officers that he obtained the firearm from a friend, but he refused
           to provide the name of the friend from whom he obtained the weapon.  *PSR*, ¶ 6.

Robinson did not appeal.  On January 30, 2006, Robinson filed a motion seeking relief from his sentence under 28 U.S.C. § 2255.  Liberally construed, Robinson argues that he is entitled to relief under § 2255 because he was denied effective assistance of counsel in connection with his guilty plea and sentencing proceedings.  He contends further that his sentence is unconstitutional in light of *Blakely v. Washington*, 542 U.S. 296 (2004), because it was enhanced by a fact that was neither proven beyond a reasonable doubt nor admitted during the guilty plea.  The government has filed an answer with a motion to dismiss, arguing that Robinson is not entitled to the relief that he seeks.  Robinson has not filed a response. The parties' arguments are discussed in more detail below under the governing standard of review.

## II.   STANDARD OF REVIEW FOR SECTION 2255 MOTIONS

To obtain collateral relief pursuant to 28 U.S.C. § 2255, a petitioner "must clear a significantly higher hurdle" than the standard that would exist on direct appeal.  *United States v. Frady*, 456 U.S. 152, 166 (1982).  When a defendant has been convicted and his conviction has been upheld on direct appeal, there is a presumption that the defendant's conviction is fair and final.  *United States v. Cervantes*, 132 F.3d 1106, 1109 (5th Cir. 1998). "As a result, review of convictions under section 2255 ordinarily is limited to questions of constitutional or jurisdictional magnitude, which may not be raised for the first time on collateral review without a showing of cause and prejudice."  *Id.*  Of course, this procedural bar does not apply to claims that could not have been raised on direct appeal, such as those for ineffective assistance of counsel.  *See Massaro v. United States*, 538 U.S. 500 (2003)

5

(holding that ineffective assistance claims are properly raised on collateral review and not procedurally barred by a failure to raise them on direct appeal).

The defendant proceeds *pro se* in this matter.  A prisoner's *pro se* pleadings are reviewed under a less stringent standard than those drafted by attorneys and are entitled to a liberal construction that includes all reasonable inferences which can be drawn from them. *See Haines v. Kerner*, 404 U.S. 519 (1972).   At the same time, however, prisoners proceeding *pro se* are still required to provide sufficient facts in support of their claims. *United States v. Pineda*, 988 F.2d 22, 23 (5th Cir. 1993).  Even under the rule of liberal construction, "mere conclusory allegations on a critical issue are insufficient to raise a constitutional issue."  *Id.* (citing *United States v. Woods*, 870 F.2d 285, 288 n.3 (5th Cir. 1989)); *see also Ross v. Estelle*, 694 F.2d 1008, 1011 (5th Cir. 1983) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . to be of probative evidentiary value.").

III.   **DISCUSSION**

A.   **The Effect of Robinson's Guilty Plea**

Before addressing the challenges raised by Robinson, the Court pauses to consider the effect of his guilty plea.  "A guilty plea 'is more than a confession which admits that the accused did various acts.'"  *United States v. Broce*, 488 U.S. 563, 570 (1989) (quoting *Boykin v. Alabama*, 395 U.S. 238 (1969)).  "It is an 'admission that he committed the crime charged against him.'"  *Id.* (quoting *North Carolina v. Alford*, 400 U.S. 25, 32 (1970)).  "By

entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of the substantive crime." *Id.*

As a general rule, "[a] voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." *Mabry v. Johnson*, 467 U.S. 504, 508 (1984). It is well established that criminal defendants have only a limited ability to challenge a conviction entered pursuant to a valid guilty plea:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in *McMann* [*v. Richardson*, 397 U.S. 759, 770 (1970)].

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Thus, a voluntary guilty plea waives all non-jurisdictional defects in the proceedings against the defendant, including those claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary. *See United States v. Glinsey*, 200 F.3d 386, 392 (5th Cir. 2000). As discussed further below, Robinson fails to show that his decision to plead guilty was tainted by ineffective assistance of counsel or that he is entitled to relief from his sentence under 28 U.S.C. § 2255 for any other reason.

**B.      Ineffective Assistance of Counsel**

Robinson seeks relief from his guilty plea and sentence on the grounds that he was denied effective assistance of counsel. Robinson was represented at all times in this action

by Assistant Federal Public Defender Brent E. Newton.  The government argues that all of Robinson's ineffective-assistance claims are without merit and it has supplemented the record with a detailed affidavit from Newton.  *See* Crim. Doc. #45, Exhibit A, [hereinafter, *Newton Affidavit*].

The Sixth Amendment to the United States Constitution guarantees criminal defendants the effective assistance of counsel. *See Yarborough v. Gentry*, 540 U.S. 1, 5 (2003).  Claims for ineffective assistance of counsel are analyzed under the well-settled standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  To prevail under the *Strickland* standard, a defendant must demonstrate both constitutionally deficient performance by counsel and actual prejudice as a result of the alleged deficiency.  *See Williams v. Taylor*, 529 U.S. 390, 390-91 (2000).  "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that rendered the result unreliable."  *Strickland*, 466 U.S. at 687.

Counsel's performance is constitutionally deficient if it falls below an objective standard of reasonableness.  *See United States v. Molina-Uribe*, 429 F.3d 514, 518 (5th Cir. 2005) (citing *Strickland*, 466 U.S. at 687-88).  Scrutiny of counsel's performance must be "highly deferential," and a reviewing court must make every effort "to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Molina-Uribe*, 429 F.3d at 518 (quoting *Strickland*, 466 U.S. at 689). There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. To

prove prejudice, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *United States v. Harris*, 408 F.3d 186, 189 (5th Cir. 2005) (quoting *Strickland*, 466 U.S. at 694).

In this instance, Robinson alleges that he received ineffective assistance in connection with a guilty plea. The Supreme Court has held that the two-part *Strickland v. Washington* test applies where a defendant challenges a guilty plea based on ineffective assistance of counsel with the following modification:

> The second, or "prejudice," requirement . . . focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, in order to satisfy the "prejudice" requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.

*Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). Clarifying the prejudice requirement further, the Supreme Court has emphasized that a petitioner must demonstrate that "counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Thus, a reviewing court must consider the following:

(1)     whether, but for counsel's error, the defendant would not have pleaded guilty but would have insisted upon going to trial; and

(2)     whether counsel's deficient performance caused the outcome to be unreliable or the proceeding to be fundamentally unfair.

*Armstead v. Scott*, 37 F.3d 202, 207 (5th Cir. 1994), *cert. denied*, 514 U.S. 1071 (1995).

Although Robinson does not dispute that he was a previously convicted felon in possession of a firearm, he alleges that he was denied effective assistance of counsel and that, but for Newton's deficient performance, he would not have pled guilty and would have insisted on a trial. A liberal construction of Robinson's motion and supporting memorandum reveals the following allegations of deficient performance on Newton's part: (1) he failed to object or otherwise ensure that Robinson received an additional 1-level reduction in offense level at sentencing for acceptance of responsibility; (2) he failed to conduct an adequate pre-trial investigation; (3) he failed to obtain written plea agreement; (4) he failed to raise an objection to the sentence under *Blakely v. Washington*, 542 U.S. 296 (2004); (5) he gave incorrect advice about the effect *Blakely* would have on his sentence; (6) he made a false promise "that the base offense level would be no more than 21"; and (7) he induced Robinson to plead guilty by telling him that he would qualify for an 18-month reduction in his term of imprisonment upon the completion of a residential drug treatment program offered by the Bureau of Prisons. Robinson also includes a general claim that, overall, Newton was "deficient in his total performance." Each alleged deficiency is examined below under the applicable law.

### 1.    Failure to Obtain an Additional 1-Level Reduction

Robinson complains that Newton was deficient because he failed to ensure that the trial court awarded an additional 1-level reduction in the base offense level score at sentencing. Robinson refers to the number of levels the offense score is reduced under

§ 3E1.1 of the Sentencing Guidelines.  That Guideline allows a reduction of up to 3 levels for a defendant's acceptance of responsibility.  According to § 3E1.1(a), a defendant who "clearly demonstrates acceptance of responsibility" is automatically entitled to a decrease in the offense level by 2 levels.  Where the offense level exceeds a certain amount, § 3E1.1(b) authorizes a decrease of 1 additional level "upon motion of the government[.]" Robinson correctly notes that the government filed a motion authorizing the additional 1-level reduction off in this instance.  Believing that he did not receive the additional 1-level off, Robinson asserts that Newton was deficient for failing to object or to otherwise ensure that he received the full 3-level decrease for acceptance of responsibility.

Robinson is mistaken.  In his affidavit to the Court, Newton explains that he did not raise an objection on this issue because the Court adopted the PSR and its recommended sentencing range, which gave Robinson full credit for the "third point off" under § 3E1.1(b). *Newton Affidavit*, ¶ 6.  The record supports Newton's account.  When it prepared the PSR, the Probation Office anticipated that the government would file the requisite motion for the additional 1-level reduction under §3E1.1(b) and awarded Robinson all 3 levels, reducing Robinson's base offense level of 26 to 23 with full credit for acceptance of responsibility. *See* PSR, ¶ 21.

The transcript of the plea proceeding confirms that the Court adopted the PSR and awarded Robinson the full 3-level reduction for acceptance of responsibility, which lowered his base offense level score from 26 to 23, without waiting for the government's motion:

THE COURT:        . . . The offense level then is a 23. . . .

11

* * * *

| | |
|---|---|
| GOVERNMENT: | First of all, your Honor, we would also make a motion for a one point decrease at this time. |
| THE COURT: | Okay. |
| GOVERNMENT: | He did plea[d] early and timely, so – |
| THE COURT: | Oh.  Well I've already – thank you. |
| GOVERNMENT: | Well, you've already done that. |
| THE COURT: | I do need the motion.  Thank you. [I] [d]idn't mean to jump the gun. |

*Sentencing Transcript*, at 3.  Because Robinson received the full 3-level reduction in offense

level for acceptance of responsibility, including the 1 additional level awarded on the

government's motion, he fails to show that Newton was deficient for failing to raise this

issue at sentencing or that he suffered any prejudice as a result.[5]   Accordingly, Robinson

fails to demonstrate that he received ineffective assistance of counsel in connection with the

calculation of his points for acceptance of responsibility.

## 2.    Failure to Conduct an Adequate Pretrial Investigation

Robinson maintains that Newton was deficient because he failed to conduct an

adequate pre-trial investigation.  A defendant who alleges a failure to investigate on the part

of his counsel must state with specificity what the investigation would have revealed and

---

[5]         Robinson's § 2255 motion contains a separate ground for relief, which alleges that this Court erred by failing to award the same 1-level reduction in offense level. Because the record shows that Robinson received the 1-level reduction at issue, and that there was no error in the calculation of his offense level for acceptance of responsibility, the Court does not address this claim further.

how it would have benefitted his defense. *See United States v. Glinsey*, 209 F.3d 386, 393 (5th Cir.) (citing *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989)), *cert. denied*, 531 U.S. 931 (2000). Robinson supplies no details in support of this claim and his conclusory allegations fall far short of the showing required to demonstrate ineffective assistance of counsel in this context.

Moreover, the record refutes Robinson's contention that an inadequate investigation was done. Newton insists that he conducted an adequate pretrial investigation, in which he "carefully reviewed the prosecution's 'open file' discovery and also interviewed Mr. Robinson about what occurred before and during the arrest." *Newton Affidavit*, ¶ 4. Newton notes that there was no dispute that Robinson possessed a firearm or that he was a convicted felon. *Id.* Newton believed that "the only possible issue . . . worth exploring" was whether the warrantless arrest and seizure of the pistol was unlawful under the Fourth Amendment. *Id.* Newton reportedly researched the topic and concluded there was no Fourth Amendment violation based on the undisputed facts. *Id.*

Robinson does not contradict Newton's account of the pretrial investigation conducted in this case. Likewise, Robinson neither indicates what additional investigation could have been done, nor suggests how it would have benefitted his defense. Thus, Robinson fails to demonstrate that Newton failed to conduct an adequate pretrial investigation. Therefore, Robinson fails to show that his counsel was deficient in this regard, or that he was actually prejudiced as a result, and he fails to establish a valid ineffective-assistance claim on this issue.

13

### 3.     Failure to Obtain a Written Plea Agreement

Robinson contends that Newton was deficient because he failed to obtain a written plea agreement on his behalf. Robinson provides no support for his claim that he would have been better off with a written plea agreement than without one. In fact, it appears that the opposite is true.

As Newton explains in his affidavit, the standard written plea agreement offered by the local United States Attorney's Office in a single-count § 922(g)(1) case like this one simply agrees to the recommended 3-level reduction for acceptance of responsibility, but otherwise provides no benefit to a defendant. *See Newton Affidavit*, ¶ 5. Newton correctly notes that a defendant can obtain the same benefit "by pleading 'straight up' to the indictment," as Robinson did in this instance. *Id.* Newton reportedly advises all of his clients that, in this situation, there is "no benefit to entering a plea agreement and, instead, there was only a potential disadvantage" because the written plea agreements offered by the government usually require a defendant to waive his right to appeal. *Id.* The Court agrees and also takes judicial notice that these written plea agreements typically also include a waiver of the opportunity to pursue collateral review under 28 U.S.C. § 2255.

Robinson fails to articulate any possible benefit that he could have, but did not receive had his counsel negotiated a written plea agreement in this case. It follows that Robinson fails to demonstrate that his counsel was deficient for failing to obtain a written plea agreement, or that he was actually prejudiced as a result, and he fails to establish a valid ineffective-assistance claim on this issue.

14

### 4.    Failure to Raise a *Blakely* Objection

Robinson complains that Newton failed to make an objection at sentencing under *Blakely v. Washington*, 542 U.S. 296 (2004), to dispute a 2-level enhancement to the base offense score.  Robinson notes that the PSR prepared by the Probation Office increased his base offense level score by 2 levels under § 2K2.1(b)(4) of the Sentencing Guidelines, based on allegations that the firearm he possessed was determined to have been stolen.[6]  Robinson disputes that the firearm was stolen.  He complains therefore that Newton was deficient for failing to object that his sentence was increased by a fact that was not proven beyond a reasonable doubt or admitted to in connection with the guilty plea.

In *Blakely*, the Supreme Court invalidated an exceptional sentence imposed by a state court because it was based, in part, on facts that were not admitted by the defendant during his guilty plea.  In doing so, the Supreme Court applied the rule in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), which requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Robinson fails to establish that his counsel was deficient for failing to raise an objection under *Blakely* in this instance.

---

[6]          PSR, ¶ 9.  Section 2K2.1(b)(4) of the Sentencing Guidelines provides for an increase in the base offense level by 2 levels "[i]f any firearm was stolen, or had an altered or obliterated serial number . . . ."  U.S. Sentencing Guidelines Manual § 2K2.1(b)(4) (2003).

The record shows that Newton did raise a *Blakely* objection to the PSR prior to sentencing, complaining that the enhancement under § 2K2.1(b)(4) was unconstitutional because there was no proof beyond a reasonable doubt that the firearm actually was stolen. (Crim. Doc. # 19).  At the time that Robinson entered his guilty plea, there was doubt about whether the rule in *Blakely* applied to the United States Sentencing Guidelines.  *See United States v. Piniero*, 377 F.3d 464 (5th Cir. 2004).  As a result, this Court postponed Robinson's sentencing until this issue was resolved by the Supreme Court.

On January 12, 2005, the Supreme Court issued its decision in *United States v. Booker*, 543 U.S. 220 (2005), which extended the ruling in *Blakely* to sentences imposed under the United States Sentencing Guidelines.  In *Booker*, the Supreme Court held that a federal sentence may not be increased beyond the maximum authorized by the facts admitted by the defendant in connection with a plea of guilty or proved to a jury beyond a reasonable doubt.  *Id.* at 244.  As a result of *Booker*, the Sentencing Guidelines became advisory, rather than mandatory, requiring a sentencing court to consider Guidelines ranges, but requiring a court to tailor the sentence in light of all the statutory factors found in the Sentencing Reform Act of 1984, 18 U.S.C. § 3553(a).  *See id.* at 245-46.

After the decision in *Booker*, which was issued on January 12, 2005, but before Robinson's sentencing hearing on March 9, 2005, Newton filed a written "Advisory" with the Court to supplement his objection to the PSR, and to explain the effect of the *Booker* decision.  (Crim. Doc. # 25).  In that Advisory, Newton noted that, after *Booker*, the sentencing court was obliged to calculate and consider the U.S. Sentencing Guideline range,

but was ultimately "free to sentence Mr. Robinson anywhere within the statutory [imprisonment] range of 0-10 years." *Id.* In other words, Newton argued that under *Booker*, the Court had the authority to sentence Robinson to a term of imprisonment of less than the Guidelines range proposed by the PSR (*i.e*, 92-115 months).[7] In his Advisory, Newton advocated for a prison sentence for Robinson of 60 months or less, far below the Guidelines range recommended by the PSR.

At the sentencing, the Court ruled that the *Blakely* objection was "moot" in light of *Booker*, and explained as follows:

COURT:      Okay.  I'm making the [PSR], the Defendant's objection, the Defendant's supplement, an advisory to the Court, as well as the addendum part of the record.  I'll also make the sentence data sheet and the factual basis, or the proffer, part of the record.

To be clear, I think you all have – you understand that the Sentencing Guidelines are no longer binding on me.  They're advisory.  But they are important.  And I intend to take them seriously.  And I intend to defer to them in most cases where I think that the range seems fair and logical, and in furtherance of the Sentencing Reform Act.  But I do not feel bound to them. They're not mandatory.

I do intend to use the preponderance of the evidence standard and impose a sentence sufficient, but not greater than necessary.

The Defendant had objections that related to the *Blakely* issue.  That's, of course, moot.  And the issue about whether or not the firearm had been previously stolen is now academic.

NEWTON:     That's correct.

_____

[7]           Newton argued on Robinson's behalf that the *Blakely* issue was "moot" since the Court now had discretion to sentence outside the Guidelines range.

17

*Sentencing Transcript*, at 2-3.  In his affidavit submitted in response to Robinson's § 2255 Motion, Newton maintains that he filed the appropriate objection.  *Newton Affidavit*, ¶ 8. Newton insists further that he "correctly acknowledged that [his *Blakely*] objection was moot in light of the "systemic remedy" announced in *Booker*, which made the Sentencing Guidelines advisory.  *Id.*

Because Newton raised an appropriate objection under *Blakely*, Robinson fails to show that his performance was deficient.[8]  Further, Robinson cannot show there was prejudice from Newton's failure to press a *Blakely* objection.  If the Court had disregarded the PSR's finding that the firearm had been reported stolen, and had not imposed the 2-level enhancement under § 2K2.1(b)(4), the Guidelines advisory sentencing range would have been 77 to 96 months.  The 92-month sentence imposed by the Court is within that new range.  This Court would have imposed the same 92-month sentence even if the new range had been found to apply, given all the circumstances of this case, Robinson's unusually extensive criminal history, and the lack of any gainful employment throughout his entire life. The 92-month sentence advances all the purposes of 18 U.S.C. § 3553(a).[9]

---

[8]     Furthermore, "a district court may adopt the facts contained in a PSR without further inquiry if those facts have an adequate evidentiary basis with sufficient indicia of reliability and the defendant does not present rebuttal evidence or otherwise demonstrate that the information in the PSR is unreliable."  *United States v. Rose*, 449 F.3d 627,_  (5th Cir. 2006) (quoting *United States v. Cabrera*, 288 F.3d 163, 173-74 (5th Cir. 2002)).  The PSR's explanation that the firearm was reported stolen in Galveston, Texas, was based on reports of the Bureau of Alcohol, Tobacco and Firearms.  *See* PSR, ¶ 3.  Robinson has provided no evidence that the finding reported in the PSR is not correct.

[9]     The Court recognizes that during the sentencing hearing, Robinson discussed the fact
(continued...)

Because the Court sentenced Robinson consistent with the Supreme Court's decision in Booker, and the sentence imposed was well below the statutory maximum of 120 months, Robinson fails to show that he did not receive the full benefit of the *Blakely* ruling. Robinson accordingly does not demonstrate that he suffered any actual prejudice from counsel's abandonment of the *Blakely* argument and Robinson fails to show that he received ineffective assistance of counsel in this connection.

### 5.    Incorrect Advice About *Blakely*

In a separate claim, Robinson complains that Newton was deficient because he gave him incorrect advice about the effect *Blakely* would have on his sentence. In particular, Robinson complains that Newton told him that he could receive a sentence of 77 to 96 months in light of *Blakely* because his indictment did not allege that the firearm found in his possession was stolen, for purposes of the enhancement under § 2K2.1(b)(4), and the Government did not prove beyond a reasonable doubt that the gun was stolen.

Newton responds that he did advise Robinson that, if the Fifth Circuit or the Supreme Court "were to apply *Blakely* to the United States Sentencing Guidelines and thereby required all sentencing enhancements to be pleaded in the indictment and proven to a jury beyond a reasonable doubt (or admitted by the defendant), then his sentence likely would be 77 months since the stolen gun allegation was not contained in the indictment (assuming he

---

[9]       (...continued)
that he believed he had been embarrassed by his past, and the Court noted that he may have "turned a corner." Nevertheless, the Court also focused on his enormously long criminal record and the fact that he repeatedly committed crimes very shortly after release from incarceration.

19

did not admit to it at his guilty plea)." *Newton Affidavit*, ¶ 7.  The prediction that Robinson could face a range of imprisonment of 77 to 96 months is documented by handwritten notations made on a letter that Newton sent to Robinson on June 17, 2004.  *See* Crim. Doc. # 48 (filed under seal).  The handwritten prediction documented in the letter is premised on an application of *Blakely* to the enhancement for the stolen gun  that was alleged to have been in Robinson's possession.  *Id.*; *Newton Affidavit*, ¶ 7.

Newton emphasizes that he explained to Robinson that he "could not predict with certainty whether *Blakely* would end up reducing his likely sentencing range from 92-115 months to 77-96 months." *Newton Affidavit*, ¶ 7.  Newton's letter dated June 17, 2004, and its handwritten notations support Newton's contention that he advised Robinson, correctly, that his minimum sentence could be 92 months even after *Blakely*.  *See Newton Affidavit*, ¶ 7.  At best, Robinson makes only unspecific allegations about the advice that he received regarding his potential sentence in light of *Blakely*.  The record does not demonstrate that Newton provided erroneous advice to Robinson about *Blakely* or that Newton was otherwise deficient in this regard.  Likewise, as noted above, Robinson was sentenced in accordance with the law in place at the time under *Booker* and, therefore, Robinson fails to show that he suffered any actual prejudice as the result of his counsel's advice.  Therefore, Robinson fails to establish that he received ineffective assistance of counsel concerning the effect of *Blakely* upon his sentence.

### 6.    False Promise of a 77-month Sentence

In a related claim, Robinson contends that Newton was deficient because he made a "faulty" promise that if he entered a guilty plea immediately, then "the base offense level

would be no more than 21," with a possible range of imprisonment of 77-96 months. Instead, Robinson's total offense level score was determined to be 23, with a range of imprisonment between 92-115 months.  Thus, Robinson appears to claim that his guilty plea was induced by a "promise" by his counsel.

To be constitutionally valid, a guilty plea must be knowing and voluntary.  *See United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998).  It is well established that, as long as the defendant was fully aware of the direct consequences of his action, a guilty plea will stand unless it was improperly induced:

> A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (*e.g.*, bribes).

*Montoya v. Johnson*, 226 F.3d 399, 405 (5th Cir. 2000) (quoting *Brady v. United States*, 397 U.S. 742, 755 (1970)), *cert. denied*, 532 U.S. 1067 (2001).  For example, where a defendant can show that the court, the prosecutor, or defense counsel induced his guilty plea by "clearly and unequivocally *guaranteeing* a lesser sentence or some other specific leniency, the guilty plea is not voluntary unless the defendant receives that which he was promised." *Daniel v. Cockrell*, 283 F.3d 697, 703 (5th Cir. 2002) (emphasis in original) (citing *United States v. Amaya*, 111 F.3d 386, 388-89 (5th Cir. 1997) (holding that the district court's legally unfulfillable promise to impose sentence as though the government had moved for a downward departure rendered the defendant's guilty plea involuntary)).  To make this

showing, the defendant must demonstrate that an actual promise or guarantee was made by establishing:  (1) the exact terms of the alleged guarantee; (2) exactly when, where and by whom the guarantee was made; and (3) the identity of any eyewitnesses to the guarantee. *Daniel*, 283 F.3d at 703 (citing *DeVille v. Whitley*, 21 F.3d 654, 658 (5th Cir. 1994)); *see also Cervantes*, 132 F.3d at 1110.

Under this analysis, the Fifth Circuit has made clear that "[a] guilty plea is not rendered involuntary by the defendant's mere subjective understanding that he would receive a lesser sentence." *Daniel*, 283 F.3d at 703.  "In other words, if the defendant's expectation of a lesser sentence did not result from a promise or guarantee by the court, the prosecutor, or defense counsel, the guilty plea stands." *Id.* (citing *Spinelli v. Collins*, 992 F.2d 559, 561-62 (5th Cir. 1993) (defendant's mistaken belief that he would be eligible for parole after five years did not render his guilty plea involuntary because his misunderstanding did not result from promise by court, prosecutor or defense counsel)).  "Likewise, a guilty plea is not rendered involuntary because the defendant's misunderstanding was based on defense counsel's inaccurate *prediction* that a lesser sentence would be imposed." *Daniel*, 283 F.3d at 703-04 (emphasis in original) (citations omitted).

Newton insists that he did not promise Robinson that he would receive a base offense level of 21 or a sentencing range starting at 77 months if he were to promptly plead guilty in this case. *Newton Affidavit*, ¶ 7.  Newton explains that on June 17, 2004, over one month before the rearraignment, he "predicted" that Robinson's sentencing range following a guilty plea, taking into account the 3-level reduction for acceptance of responsibility, would be 92-

115 months.  *Id.*  Newton documented this prediction in a letter to Robinson that is dated June 17, 2004.  That letter, which has been provided to the Court under seal, clearly reflects no more than an "estimate," at best, that "with an early guilty plea and no pretrial motions being filed, [Robinson's] total points (with 3 levels off for acceptance of responsibility) will be 23," with a sentencing range of 92-115 months in light of his criminal history.  (Crim. Doc. #48).  Thus, the letter supports Newton's position that he gave no more than an estimate, which predicted a base offense level score of 23, and not 21.

Robinson's conclusory allegations in this case do not directly controvert Newton's affidavit, which is supported by the letter described above.  Admissions made by the defendant during the plea colloquy further undercut Robinson's claim that he relied upon a false promise regarding the potential sentence:

| THE COURT: | Okay.  Has anybody made you any promises about what your sentence will be in this case? |
|---|---|
| ROBINSON: | No. |
| THE COURT: | Yeah.  Has Mr. Newton given you some estimates of what the sentence might be if you're sentenced under the Guidelines? |
| ROBINSON: | What it could be? |
| THE COURT: | What it could be. |
| ROBINSON: | Yes, ma'am. |
| THE COURT: | Okay.  He is doing his job. |
| ROBINSON: | Yes, ma'am. |

| | |
|---|---|
| THE COURT: | He is giving you his best estimate, his educated guess, but he is not making you a promise. |
| ROBINSON: | Yeah.  I understand. |
| THE COURT: | Understand?  And he's basing that on what he knows about you now, and about this crime. |
| | But he cannot make you any guarantees.  Is that clear? |
| ROBINSON: | Yeah.  I understand. |
| THE COURT: | Okay.  And I've not talked to him about this case at all outside of your presence and we've never talked about what the sentence would be. |
| | So Mr. Newton can't tell you with any certainly since I don't know what I'm going to give you.  So he clearly cannot know what you're going to get. |
| ROBINSON: | Yes, ma'am. |

*Rearraignment Transcript*, at 28-29.  Notably, Robinson stated under oath at the rearraignment that he had not been promised any particular sentence and that he further understood any prediction from his counsel to be just that – a prediction, and not a promise.

The assurances made by Robinson in open court during his plea colloquy are entitled to "great weight[.]" *United States v. Cothran*, 302 F.3d 279, 283-84 (5th Cir. 2002).  It is well recognized that the advantages of the plea bargaining system "can be secured . . . only if dispositions by guilty plea are accorded a great measure of finality."  *Montoya*, 226 F.3d at 406 (quoting *Blackledge v. Allison*, 431 U.S. 63, 71 (1977)).  "Thus, 'the representations of the defendant, his lawyer, and the prosecutor at [the original plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any

subsequent collateral proceedings.  Solemn declarations in open court carry a strong presumption of verity.'"  *Montoya*, 226 F.3d at 406 (quoting *Blackledge*, 431 U.S. at 74) (alteration in original).

The record reflects that Robinson understood that any information from his counsel about the potential sentence was, at best, an estimate or a prediction.  Even if Newton is deemed to have stated at one place in his correspondence with Robinson that the base offense level could be 21 (with the resulting sentencing range of 77-96 months), Robinson fails to establish that his counsel's performance was deficient or that Robinson's decision to plead guilty was influenced by an unequivocal promise by his counsel about the base offense level. It follows that Robinson fails to show that his guilty plea was rendered involuntary or unknowing because he received ineffective assistance of counsel regarding this issue.

### 7.    Residential Drug and Alcohol Abuse Program

Robinson contends further that Newton's performance was deficient, and that his guilty plea was improperly induced, because he was "mislead to believe that his charge qualified for an eighteen (18) month deduction [sic] in sentence" upon the completion of a drug treatment program.  Robinson apparently refers to the Residential Drug and Alcohol Abuse Program ("RDAAP") offered by the Bureau of Prisons.  *See* 18 U.S.C. § 3621(e) (allowing a reduction in sentence for eligible inmates who successfully complete a treatment program).  Robinson complains that he has since learned that persons convicted of an offense involving a firearm are not eligible for the reduction in sentence that is available to some offenders who complete the RDAAP treatment regimen while in prison.  *See Venegas v.*

*Henman*, 126 F.3d 760 (5th Cir. 1997) (upholding regulations by the Bureau of Prisons excluding offenders convicted of being a felon-in-possession of a firearm from eligibility for the sentence reduction for successful completion of the residential substance abuse treatment program).

Robinson provides no details in support of his allegation that Newton promised him that he would be eligible for an 18-month reduction in sentence upon the completion of the RDAAP treatment regimen. Newton denies ever advising Robinson that he could reduce his prison sentence by 18 months if he participated in the Bureau of Prison's treatment program. *Newton Affidavit*, ¶ 9. Newton states that, as he routinely does with all of his clients facing firearms charges under 18 U.S.C. § 922(g), he advised Robinson "that he could *not* get any benefit (in terms of a reduction in his sentence) from participating in the RDAAP because his offense involved a firearm." *Id.* (emphasis in original). Instead, Newton explains that he advised Robinson that "he could reduce his prison time by approximately 20 months based on 'good time credit' (assuming he was well behaved in prison)." *Id.* In support, Newton points to his letter to Robinson, dated June 17, 2004, which contains a "real time" estimate about the potential length of incarceration, less "good time" credit and the potential for early release to a half-way house. (Crim. Doc. #48). The letter contains no promise of any other possible reductions in the potential sentence and makes no mention of time off for completing the RDAAP.

Robinson's conclusory claim is insufficient to show that Newton provided misleading advice about the possibility of a sentence reduction upon completion of the RDAAP regimen

or that his counsel promised that he would be eligible for such a reduction.  *See Daniel*, 283 F.3d at 703 (requiring the exact terms of the alleged guarantee, accompanied by the exact date, and location of the guarantee, as well as the identity of any eyewitnesses).  Robinson does not otherwise establish that his counsel's performance was deficient in connection with his advice about the potential sentence.  Accordingly, he fails to show that his guilty plea was induced by misleading advice or that he was denied effective assistance of counsel on this issue.

### 8.    Cumulative Error

In the first ground for relief listed in his motion, Robinson alleges that Newton's overall performance was totally deficient.  This claim does not merit relief because it is unsupported by additional facts and is therefore conclusory.

To the extent that Newton complains that his plea is invalid because of cumulative error, he has failed to show that his counsel's performance was deficient in any respect.  Relief is only available for cumulative errors that are of a constitutional dimension.  *See, e.g., Coble v. Dretke*, 444 F.3d 345, (5th Cir. 2006) (citing *Livingston v. Johnson*, 107 F.3d 297, 309 (5th Cir. 1997); *Yohey v. Collins*, 985 F.2d 222, 229 (5th Cir. 1993)).  Because he has not identified any errors of constitutional dimension, Robinson is not entitled to relief under a theory that his conviction is tainted by cumulative error.

### C.    *Blakely* Claim

In a separate ground for relief, Robinson repeats the claim that his sentence is unconstitutional under *Blakely* because the base offense level was increased by two levels

under the U.S. Sentencing Guidelines § 2K2.1(b)(4) because of "unproven" allegations that the firearm he possessed was reported stolen.  Given that the Court sentenced Robinson to a sentence it thought appropriate after consideration of all the factors in § 3553(a), and the fact that the Court would have imposed a 92-month term of incarceration irrespective of the stolen gun allegation, *see supra* at p. 18 & n.9 , any claim by Robinson under *Blakely* is moot as the result of the Supreme Court's decision in *Booker*.

Robinson does not allege or show that his sentence violates *Booker*.  Because Robinson did not pursue an appeal, any claim under *Booker* is barred by the doctrine of procedural default in this instance and Robinson does not allege facts showing that he fits within any recognized exception.  *See Bousley v. United States*, 523 U.S. 614, 622 (1998). Even if not procedurally barred, for reasons discussed in more detail above in connection with his ineffective-assistance claims, Robinson does not establish that the 92-month sentence that he received was invalid under *Booker*.  The Court concludes, therefore, that Robinson is not entitled to relief on this issue.

## IV.   EVIDENTIARY HEARING

The defendant has requested an evidentiary hearing on his claims.  A motion brought under 28 U.S.C. § 2255 may be denied without a hearing if the motion, the files, and the records of the case conclusively show that the prisoner is entitled to no relief.  *See United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992) (per curiam) (citing *United States v. Auten*, 632 F.2d 478 (5th Cir. 1980)).  In this case, the record is adequate to dispose fairly

of the allegations made by the defendant.  A district court need inquire no further on collateral review.  Therefore, the defendant's request for an evidentiary hearing is denied.

## V.   CERTIFICATE OF APPEALABILITY

The defendant's § 2255 motion is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, codified as amended at 28 U.S.C. § 2253.  Thus, a certificate of appealability is required before an appeal may proceed.  *See Hallmark v. Johnson*, 118 F.3d 1073, 1076 (5th Cir.) (noting that actions filed under either 28 U.S.C. § 2254 or § 2255 require a certificate of appealability), *cert. denied sub nom. Monroe v. Johnson*, 522 U.S. 1003 (1997).  "This is a jurisdictional prerequisite because the COA statute mandates that '[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals . . . .'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability will not issue unless the petitioner makes "a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), which requires a petitioner to demonstrate "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  Under the controlling standard, this requires a petitioner to show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El*, 537 U.S. at 336.  Where denial of relief is based on procedural grounds, the

petitioner must show not only that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right," but also that they "would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

A district court may deny a certificate of appealability, *sua sponte*, without requiring further briefing or argument. *See Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). After carefully considering the entire record of the criminal proceeding, the Court concludes that jurists of reason would not debate whether the movant has stated a valid claim or whether any procedural ruling in this case was correct. Accordingly, a certificate of appealability will not issue.

## VI.   CONCLUSION AND ORDER

Based on the foregoing, the Court **ORDERS** as follows:

1.   The government's motion to deny relief and to dismiss the corresponding civil action (Crim. Doc. #46) is **GRANTED**.

2.   The defendant's pending § 2255 motion (Crim. Doc. #38) is **DENIED** and the corresponding civil action (H-06-0309) is **DISMISSED** with prejudice.

3.   A certificate of appealability from this decision is **DENIED**.

The Clerk will provide a copy of this order to the parties and will file a copy of this order with the docket in Civil Action No. H-06-0309.

SIGNED at Houston, Texas, on **June 29, 2006**

Nancy F. Atlas
United States District Judge